**Donald Gene STEVENS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17872.**

Court of Criminal Appeals of Oklahoma.

May 21, 1973.

Paul D. Brunton, Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Robert Dennis, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant, Donald Gene Stevens, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, Case No. CRF–70–753, for the offense of Burglary in the Second Degree, After Former Conviction of a Felony. His punishment was fixed at fifteen (15) years imprisonment. An appeal has been perfected to this Court from denial of post-conviction relief by the trial court.

At the trial, Michael Roy Johnson testified that on the 22nd day of April 1970, at approximately 10:05 p. m. he observed two men in his back yard. They jumped the fence and walked down the alley to the Aerial Data Services Building. They pried open the backdoor and entered the building. His father called the police. Upon the arrival of the police car, the shorter of the two men ran from the building, jumped over the fence and ran down the side of his yard. He told the police that one of the men was still in the building. He described that person as being a white male,

twenty-one or twenty-two years, five foot eight or nine inches tall, one hundred sixty-five pounds, dark hair, wearing a yellow jacket or shirt with dark pants and a hairy face.

Jack Beindorf testified that he was the owner of Aerial Data Services and that on the evening in question he locked his business at approximately 9:30 p. m. He returned to the building at approximately 10:30 p. m. and observed that the front window was broken out and that the lock on the backdoor had been damaged. Drawers had been removed from a desk and turned upside down on the floor. He testified that he did not give anyone permission to enter the premises that evening.

Officer Clyde Lawson testified that he received a call at approximately 10:34 p. m. concerning a burglary in process. He immediately proceeded to the back of the shopping center and observed a door ajar. He dismounted from his police unit and attempted to enter the rear door when it was suddenly jerked from his hand and shut. He went back to the police unit to radio for assistance and heard several gunshots.

Detectives Eddie Seals and Bob Garutte testified that they received a call from the dispatcher and proceeded to the shopping center. Shortly after arriving they observed a man crash through the window of the Aerial Data Services Building. The man ran across the parking lot carrying a crowbar. Detective Garutte hollered for him to stop and when he continued to run, they fired several shots at him. The subject screamed, fell down on one knee and grabbed his left leg. He jumped back up and ran across a vacant field. They both described the subject as being a white male in his early twenties, weighing approximately one hundred seventy pounds, brown hair, several days growth of whiskers on his face and was wearing jeans and a yellow upper garment.

Officer Fred Coyle testified that at approximately 6:00 a. m. on April 23, 1970, he observed the defendant sitting in a stripped automobile by a Skelly Service Station. The service station was located approximately seventy-five yards east of the shopping center. The defendant was wearing a yellowish shirt, had "about a week's growth of beard" and there was blood on his left pant leg. The defendant was placed under arrest and advised of his "Miranda" rights. Defendant stated that he had been shot by two drunks in the parking area of Kathy's Lounge. The officer testified that Kathy's Lounge was located approximately three miles away from the shopping center. The defendant appeared to be in pain and had trouble walking.

Dr. Mason Lyons testified that he treated the defendant the morning of April 23 for a gunshot wound in the left buttock.

Katherine Lipp testified that she was the owner and operator of Kathy's Lounge. She testified that on the evening in question she did not observe anything unusual happening in her lounge nor in her parking lot.

The defendant did not testify nor was any evidence offered in his behalf.

██ The first proposition asserts that the trial court erred in denying defendant's motion for directed verdict because "a conviction on circumstantial evidence cannot be sustained if the proof does not exclude every other reasonable hypothesis except that of guilt." We are of the opinion that the trial court properly overruled defendant's demurrer to the evidence. The description of the person seen entering the building by witness Johnson and the description of the person seen leaving the building by Officers Seals and Garutte closely matched the description of the defendant given by arresting officer Coyle. Seals and Garutte both testified that the person was shot in the left knee. The defendant was arrested sitting in an abandoned automobile located approximately seventy-five yards from the shopping center and was bleeding from a gunshot wound in his left hip. Defendant's statement to the police officer that he had been shot at Kathy's Lounge was con-

tradicted by the testimony of the owner and operator of the lounge.

In dealing with a similar question in Williams v. State, Okl.Cr., 478 P.2d 359 (1970) we stated:

"The rules relied upon by defendant properly state the law; however, when the state presents its hypothesis, based on circumstantial evidence for the jury to consider, and no other hypothesis is offered for the jury to consider except defendant's plea of 'not guilty', the jury has little alternative but to consider that evidence presented to them; and when the state's hypothesis is logical and reasonably supported by the evidence, the jury's verdict will not be disturbed."

■ The final proposition contends that the trial court erred in allowing proof of former conviction sustained when the defendant was under eighteen years of age. The record adduces that two of the former convictions were sustained by the defendant in November of 1966 when he was under the age of eighteen years. Defendant cites as authority Lamb v. Brown, 456 F.2d 18 wherein the tenth circuit held that 10 O.S. § 1101(a) which set the age of accountability for males at sixteen to be unconstitutional. In dealing with an identical proposition in the recent case of Fields v. State, Okl.Cr., 506 P.2d 919 we stated:

"This argument is based on the decision of the Tenth Circuit United States Court of Appeals in Lamb v. Brown, 456 F.2d 18, and is without basis, for the judgments and sentences in each of the prior convictions were affirmed by this Court on November 23, 1970, and were final judgments and sentences. [See Johnson v. State, Okl.Cr., 476 P.2d 397] Lamb v. Brown, supra, was delivered by the Tenth Circuit United States Court of Appeals on March 16, 1972, and in Lamb v. Brown, supra, it specifically provided that it was not to be applied retroactively. Moreover, this Court stated in Schaffer v. Green, Okl.Cr., 496 P.2d 375 (1972), in pertinent part:

'From the effective date provided in Lamb v. Brown as being prospective, or, if later decided to be retroactive by the Federal Courts, the provisions of 21 O.S. § 152 shall control until superseded by constitutional legislative enactment in defining as adults all persons over the age of 14.'

"In light of Lamb v. Brown, supra, and Schaffer v. Green, supra, we are of the opinion that the prior convictions could properly be used to enhance the punishment."

The judgment and sentence is accordingly affirmed.

BLISS, P. J., concurs.

BRETT, J., concurs in part, dissents in part.

BRETT, Judge (concurring in part, dissenting in part):

I concur that the evidence was sufficient to sustain the first stage of trial; but I dissent to the after former conviction stage of the trial, and therefore, I feel the punishment is excessive.